A05A1007. WOODS v. THE STATE.
(620 SE2d 609)

MIKELL, Judge.

Following a jury trial, Kevin Lee Woods was convicted of two counts each of entering an automobile (Counts 1 and 2) and theft by receiving stolen property (Counts 8 and 10), and three counts of theft by taking (Counts 3, 5, and 7). Woods was acquitted of two additional charges each of theft by receiving stolen property (Counts 4 and 6) and theft by taking (Counts 9 and 11). The court sentenced Woods to ten years in confinement. Woods appeals from the denial of his motion for new trial, arguing that the trial court erred by admitting similar transaction evidence, in failing to find his trial counsel ineffective,

---

and in failing to merge Counts 2 and 3. For the reasons stated below, we affirm the conviction, but vacate and remand for resentencing.

Viewed in the light most favorable to the verdict, the evidence shows that at 5:00 p.m., on October 12, 2002, Janet Moss, an employee of Expo Design Center ("Expo") at Perimeter Mall, saw Woods looking into parked cars in the Expo parking lot and an adjacent Office Max parking lot. When Moss left work at 7:15 p.m., she saw three men, including Woods, standing in the Office Max parking lot. The two men left, and Moss observed Woods break the window of a car and reach his hand into the vehicle. Moss did not see Woods take anything from the vehicle. Moss immediately reported the incident to police and identified Woods in a photographic lineup three days later. She also identified him at trial.

Annette Mutz, an Office Max employee, testified that on October 12, 2002, someone broke her car window while it was parked in the Office Max parking lot. Nothing was taken from the vehicle, but an empty laptop carrier had been removed from the back seat and placed on the floor. Mutz reported the incident to police.

Three days later, on October 15, 2002, at about 10:00 p.m., Andrew Slatkin, an employee of Houston's Restaurant ("Houston's") at Perimeter Mall, observed a red Pontiac Bonneville back into a parking space on the side of the restaurant. Woods exited the vehicle, broke the window of a blue Kia, removed a laptop computer briefcase, and then jumped back into the Bonneville. Slatkin called police and followed the Bonneville, which sped off into a nearby Wal-Mart parking lot. When he got to the Wal-Mart parking lot, Slatkin saw five men, including Woods, "huddled around" the Bonneville. Police arrived and arrested Woods, Waymon Chappell, Adriel Jackson, Derrick Johnson, and Mario Liggins (a/k/a Mario Fears) as they exited the Wal-Mart. Police searched the Bonneville, which belonged to Chappell, and recovered several laptop computers, including one owned by Lena Yu; a briefcase; two camcorders; and a snare drum. At trial, Slatkin positively identified Woods as the man who broke the window of the Kia.

At trial, Yu testified that while she was eating dinner at Houston's on the evening of October 15, 2002, someone broke the window of her rented blue Kia and stole her laptop computer. Yu reported the incident to police and later identified her briefcase and laptop computer at the arrest scene.

Chappell, Woods' co-defendant, testified that before their arrest at Wal-Mart, the five men parked Chappell's Bonneville at a restaurant. Woods jumped out of the vehicle and returned five minutes later with two "laptop bags."

At trial, Woods denied breaking into any cars. As to the incident on October 15, 2002, Woods claimed that Fears jumped out of the Bonneville and returned with "bags in his hand."

1. In two related enumerations of error, Woods contends that the trial court erred in admitting similar transaction evidence. At a pretrial hearing, the state announced that it was seeking to present evidence that Woods was arrested in the Houston's parking lot on October 7, 2002, for prowling, loitering, and possession of tools for the commission of a crime. The state argued that the evidence showed Woods' modus operandi.

Officer Daniel Evan Oak of the DeKalb County Police Department testified that on the evening of October 7, 2002, he was assigned to patrol the area of Ashford-Dunwoody near Perimeter Mall, because of a rash of vehicle break-ins in the mall parking lots. As Oak pulled his patrol car into the parking lot between Houston's and a Rio Bravo restaurant, he observed Woods looking into a parked car. As Oak exited his patrol car, Woods walked toward him. Oak asked Woods what he was doing between the vehicles and Woods responded that [he was] just walking. Oak then asked Woods "where he was coming from" and Woods responded that he had been eating at Houston's. Woods then stated that he was meeting some friends and going back to Wal-Mart. Oak conducted a pat-down of Woods looking for weapons and found a flashlight in his back pocket. According to Oak, Woods kept changing his story about why he was in the parking lot and told Oak that he had just purchased the flashlight from Wal-Mart. Oak arrested Woods for loitering, prowling, and possession of tools for the commission of a crime.

The following day, after being read his *Miranda* rights, Woods told detectives that he was part of an "entering auto gang" that broke into cars to steal laptop computers in the Ashford-Dunwoody/Perimeter Mall area. Woods described his accomplices and the vehicles they used during the break-ins, including a red Bonneville, and agreed to notify police prior to their next crime spree if he could get out of jail. Woods never contacted police after his release from jail.

The trial court admitted the evidence for the purpose of showing Woods' identity, plan, scheme, and bent of mind. The trial court also issued limiting instructions to the jury as to such evidence and reminded them again during the jury charge that this evidence could be considered only for very limited purposes.

(a) Woods argues that the October 7, 2002, incident was not sufficiently similar to the charges for which he was on trial and that evidence of the prior incident was inadmissible because he was never prosecuted for it. "Absent an abuse of discretion, we will not disturb

a trial court's determination that similar transaction evidence is admissible."[1] We find no such abuse here.

Evidence of an independent offense or act may be admitted into evidence if the state makes the following affirmative showings: that it is seeking to introduce the evidence for a permissible purpose; there is sufficient evidence that the accused committed the independent offense or act; and there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.[2] "[T]here is no requirement that the other transaction be identical to the crime charged in every respect. Rather, there can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar."[3] Further, "[w]hen similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity."[4]

In this case, both the theft charges and the October 7, 2002, incident involved Woods looking into parked vehicles in and around the Perimeter Mall area. In fact, Oak observed Woods looking into a parked car in the very same parking lot where Slatkin observed him break into Yu's car. Additionally, the day after he was arrested by Oak, Woods admitted to police that he was part of an "entering auto gang" that broke into cars to steal laptop computers in the Ashford-Dunwoody/Perimeter Mall area. In light of these circumstances, we do not find that the trial court abused its discretion in admitting the October 7, 2002, incident. Moreover, there is no requirement that the state prosecute Woods for the incident prior to its admission as similar transaction evidence.[5]

(b) Woods also argues that the trial court erred in allowing the state to introduce into evidence the flashlight because it was obtained as a result of an illegal search and seizure. We disagree.

Oak's brief investigative stop of Woods was justified by a reasonable and articulable suspicion that Woods was attempting to commit

---

[1] (Punctuation and footnote omitted.) *Standfill v. State*, 267 Ga. App. 612, 614 (1) (600 SE2d 695) (2004).

[2] See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[3] (Punctuation and footnotes omitted.) *Standfill*, supra. See *Jimenez v. State*, 228 Ga. App. 668 (492 SE2d 530) (1997) (" ' "[t]he independent act does not have to be identical in character to the charged offense if there is a sufficient connection between them" ' ") (citations omitted).

[4] (Punctuation and footnote omitted.) *Collier v. State*, 266 Ga. App. 345, 348 (1) (a) (596 SE2d 795) (2004).

[5] See, e.g., *Jones v. State*, 239 Ga. App. 733 (521 SE2d 883) (1999) (in prosecution for aggravated stalking, trial court did not err in admitting evidence of three prior incidents where defendant had physically abused the victim, his former wife).

a crime.[6] While on patrol because of a rash of vehicle break-ins in the Perimeter Mall parking lots, Oak observed Woods looking into a parked car. When Oak asked Woods where he was coming from, Woods gave conflicting stories. Under the circumstances, Oak was justified in conducting a brief investigative stop of Woods.

Moreover, the evidence was sufficient to justify Oak's minimally invasive pat-down of Woods.

> A law enforcement officer, for his own protection and safety, may conduct a pat-down to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. A policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. The question is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety was in danger.[7]

In this case, Oak was alone at 8:00 p.m. patrolling the Perimeter Mall area because of reported car break-ins. He encountered Woods looking into a parked car. When Oak exited his vehicle to investigate further, Woods acted suspiciously and gave conflicting answers to the officer's questions. Under these circumstances, the officer's limited protective search was lawful. In light of this finding and our holding in Division 1 (a), the trial court did not err by admitting the flashlight.

2. Woods next contends that trial counsel was ineffective for failing to pursue a motion to suppress the flashlight.

At the hearing on the motion for new trial, defense counsel testified that though he believed the flashlight was damaging to Woods' case, he did not file a motion to suppress because he believed the flashlight was the fruit of a lawful *Terry* stop and that he did not "think we had a ground that would win" a motion to suppress.

"When trial counsel's failure to pursue a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been

---

[6] See *Landers v. State*, 255 Ga. App. 410, 412 (2) (565 SE2d 585) (2002).

[7] (Footnotes omitted.) Id.

suppressed had counsel pursued the motion."[8] Given our holding in Division 1 (b), Woods' counsel was not ineffective for failing to pursue a meritless motion to suppress.

3. Lastly, Woods contends, and the state concedes, that the trial court erred in failing to merge Counts 2 and 3 because the facts used to establish the theft by taking of Yu's laptop computer (Count 3) were also used to establish the unlawful entering of her automobile (Count 2). Because Count 2 should have merged with Count 3, we hereby vacate the sentences on Counts 2 and 3 and remand this case to the trial court for resentencing.

*Judgment affirmed in part, vacated in part and case remanded. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 1, 2005.

*Michael S. Katz*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.

---

[8] (Punctuation and footnote omitted.) *Dawson v. State*, 271 Ga. App. 217, 221 (2) (b) (609 SE2d 158) (2005).